# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **INTERNACIONAL REALTY, INC.;** | § | |
| **USA BRADENTON, LLC; USA** | § | |
| **CAMBRIA, LLC; USA CONYERS,** | § | |
| **LLC; USA MEYER PARK I, LLC; USA** | § | |
| **MEYER PARK II, LLC; USA** | § | |
| **SEASONS, LLC; CHASCO** | § | |
| **APARTMENTS, LLC; USA COURT** | § | |
| **VILLAGE, LLC; USA SAVOY, LLC;** | § | |
| **and USA HOLLISTER PLACE GP,** | § | |
| **LLC,** | § | **Civil Action No.  5:07-cv-981 - XR** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DONALD L. FERRARI; ST. GEORGE** | § | |
| **FINANCIAL, INC.; and GENOA** | § | |
| **TRADING COMPANY, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

### Background

Plaintiffs are a collection of entities involved in real estate investments in various states, including Texas.  Plaintiff Internacional Realty, Inc. ("IRI"), a Texas corporation, is either the managing or co-managing member of the other Plaintiffs (collectively herein the "LLCs").  The LLCs own apartment complexes in various states, including Texas, and sell tenant-in-common interests to investors wishing to take advantage of capital gains tax deferment from "like kind" exchanges.[1]

---

[1] I.R.C. § 1031 allows for deferment of federal capital gains taxes from the sale of certain types of property, and requires compliance with a multitude of limitations and restrictions.

U.S. Advisor, L.L.C. ("USA"), based in California, was a business partner with IRI in this apartment investment business. The nature of the IRI/USA partnership was that IRI located the specific apartment complexes and real estate investments, and USA procured capital funding for the investment projects. USA, through its CEO Kevin Fitzgerald ("Fitzgerald"), allegedly utilized Defendant Donald Ferrari ("Ferrari"), citizen of California, and Ferrari's two companies, St. George Financial, Inc. ("St. George") and Genoa Trading Company, Inc. ("Genoa") (collectively "Defendants"), to refer investors or financial advisors with high net worth clients to IRI for consideration of the 1031 investments being offered by IRI and USA.

Pursuant to supposed industry custom,[2] Defendants were paid a commission for the volume of investments referred to USA and IRI. Plaintiffs allege Defendants paid some of its commissions to Fitzgerald as a kickback. Plaintiffs further allege Defendants failed to provide, and did not intend to provide, any referrals to the IRI/USA venture, and that this failure constitutes fraud.

**Legal Standard**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[3] The "particularity" needed to satisfy FRCP 9(b) is a nebulous concept, and is subject to a case-specific analysis of the allegations.[4] Consequently, a complaint alleging

---

[2] Plaintiffs argue that they believed they were obligated to make the commission payments. Docket No. 21 at ¶22. Defendants argue there was no contractual obligation and that the commissions were purely discretionary. Docket No. 17 at 9-10.

[3] FRCP 9(b).

[4] Guidry v. Bank of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992). *See also* Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003).

fraud requires a plaintiff to specify the statements he contends are fraudulent, identify the person communicating the alleged fraudulent statements, point out the location and time of the allegedly fraudulent statements, and articulate a basis for why he contends the statements are fraudulent.[5] Additionally, averments concerning scienter must exceed mere allegations, and "plaintiffs must set forth *specific facts* supporting an inference of fraud."[6]

Despite the heightened pleading standard imposed upon a complaint for fraud, extenuating circumstances may justify the relaxation of this standard.[7]  In particular, the heightened pleading standard may be pared back where "the facts relating to the fraud are 'peculiarly within the perpetrator's knowledge.'"[8]

In Texas, a cause of action for fraud exists when there is "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury."[9]

_____

[5] Williams v. WMX Technologies, Inc., 112 F.3d 175, 177-78 (5th Cir. 1997), *cert. denied*, 522 U.S. 966 (1997) (adopting the Second Circuit's treatment of pleading in fraud cases).  *See also Benchmark Electronics, Inc.*, 343 F.3d at 724; Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000) (quoting *WMX Technologies, Inc.* by noting "a plaintiff pleading fraud must set forth 'the who, what, when, and where . . . before access to the discovery process is granted.'"); Andrews v. Am. Nat'l. Red Cross, Inc., 176 F.Supp.2d 673, 691 (W.D. Tex. 2001) (noting the requisite specificity for pleading of fraud claims); Kleck v. Bausch & Lomb, Inc., 145 F.Supp.2d 819, 828 (W.D. Tex. 2000) (enumerating specificity requirements for pleading of fraud claims).

[6] Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir. 1994) (emphasis in original).

[7] United States ex rel. Doe v. Dow Chem. Co., 343 F.3d 325, 330 (5th Cir. 2003) (citing United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir. 1999)).

[8] *Id.  See also* United States ex rel. Lam v. Tenet Healthcare Corp., 481 F.Supp.2d 689, 697 (W.D. Tex. 2007).

[9] Formosa Plastics Corp. v. Presidio Eng'rs and Contractors, Inc., 960 S.W.2d 41, 47-48 (Tex. 1998) (citations and quotation omitted).  *See also Kleck*, 145 F.Supp.2d at 828 (listing same

Promises of future performance constitute fraud "if the promise [is] made with no intention of performing at the time it [is] made."[10]

A motion to dismiss pursuant to FRCP 9(b) is treated in the same manner as a FRCP 12(b)(6) motion to dismiss.[11]  In determining the merits of a FRCP 12(b)(6) motion to dismiss, the Court must accept "all well-pleaded facts as true and . . . view them in the light most favorable to the plaintiff."[12]  Moreover, the Court "may not look beyond the pleadings" in ruling on the motion.[13]  The "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[14]  Accordingly, a pleaded right to relief exceeds speculation if the party requesting relief provides "enough facts to state a claim to relief that is plausible on its face."[15]

## Arguments

### Defendants' Arguments

Defendants' Motion to Dismiss (Docket No. 22) generally argues that Plaintiffs failed the particularity requirements of FRCP 9(b) in that Plaintiffs' Amended Complaint (Docket No. 21) does not adequately plead "what was false about any of [the] alleged misrepresentations, why they were

---

elements for fraud under Texas law.

[10] *Formosa Plastics Corp.*, 960 S.W.2d at 48.

[11] *Lam*, 481 F.Supp.2d at 693 (citing *Dow Chem. Co.*, 343 F.3d at 328).  *See also* United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 901 (5th Cir. 1997).

[12] McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992).

[13] *Id.*

[14] Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

[15] *Id.* at 1975; In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).

fraudulent, what demonstrates that the Defendants had fraudulent intent, and how any of [the allegedly fraudulent misrepresentations caused] the damages" claimed.[16]  Moreover, Defendants repeatedly insist they perpetrated no fraud because their referrals resulted in investment in Plaintiffs' real estate ventures.[17]

Specifically, Defendants argue Plaintiffs have failed to specify facts that prove any false statement was made.  In support, Defendants assert that the statements complained of were made by Kevin Fitzgerald, who was IRI's business partner at the time, and that any reliance exhibited by Plaintiffs would have arisen from statements made by Fitzgerald, and not Defendants.[18]  Additionally, Defendants claim that, because their referrals resulted in a substantial amount of investment, Plaintiffs have failed to specify facts tending to show the necessary elements of fraud, detrimental reliance, causation, and damages.[19]  Further, Defendants allege Plaintiffs have admitted that Defendants did in fact perform services, and that this admission is evidenced by IRI's CEO Hugh Caraway stating that referral fees were paid.[20]  In connection with this assertion, Defendants argue that Plaintiffs have failed to specifically plead how the payments made to Defendants are connected to any allegedly false misrepresentations.[21]

Also, Defendants assert that fraudulent intent is absent from Plaintiffs' pleadings, and that

---

[16] Docket No. 22 at ¶3.

[17] *Id.* at ¶¶2, 7, 9, and 10.

[18] *Id.* at ¶6.

[19] *Id.* at ¶7.

[20] *Id.* at ¶9.

[21] *Id.*

facts showing either motive for fraud or circumstances that indicate conscious behavior to commit

fraud are necessary to comply with the heightened pleading standards of FRCP 9(b).[22]  Defendants

aver that Plaintiffs have pled no facts indicating any conscious behavior on the part of Defendants.[23]

**Plaintiffs' Arguments**

To counter Defendants' arguments, Plaintiffs generally contend that their Complaint

sufficiently satisfies the pleading requirement for a fraud case by stating who made the supposed

misrepresentations, where and when they were allegedly made, what was false or misleading about

them, and how Plaintiffs detrimentally relied upon them.[24]

Plaintiffs argue they have sufficiently identified Defendants as having made the alleged

misrepresentations. Plaintiffs' First Amended Complaint alleges that Defendant Ferrari, individually,

and as representative of Defendants Genoa and St. George, attended a meeting in San Antonio, Texas

("San Antonio meeting") in 2002, for the purpose of marketing his investor referral services.[25]  It is

alleged that during the San Antonio meeting, Ferrari made various promises and representations in

both his individual capacity and on behalf of Genoa and St. George.[26]

---

[22] *Id.* at ¶8.

[23] *Id.* at ¶9.

[24] *See generally* Docket No. 23.

[25] Docket No. 21 at ¶3.

[26] *Id.* at ¶¶4 ("Ferrari promised and represented to IRI . . . that he would market the
Investment LLCs' investment opportunities to brokers in order to secure equity investments in the
projects."), 20 ("Defendants offered to refer registered representatives and brokers to the Investment
LLCs . . . in exchange for compensation equal to 2% of the equity specifically raised by Defendants
[sic] efforts."), 32 (Ferrari represented "Defendants would market the Investment LLCs' investment
projects to registered representatives or brokers, and would secure individual equity investors for the
projects; . . . Defendants would serve as a "wholesaler" of the Investment LLCs' investment projects

Next, Plaintiffs allege that the statements made during the San Antonio meeting were fraudulent in that Defendants did not intend to perform any services, that any fees received "would not be on account of services performed," and that Defendants secretly remitted a portion of the funds to Kevin Fitzgerald with the knowledge that Fitzgerald owed fiduciary duties to Plaintiffs.[27]

Further, Plaintiffs allege that they detrimentally relied upon the fraudulent statements by paying invoices in the name of Genoa and St. George, which Plaintiffs believe, upon information and belief, were generated at the insistence of Ferrari.[28]   Plaintiffs also allege that Defendants accepted the checks sent in response to these invoices.[29]   Plaintiffs believed they were obligated to make the payments because the invoices reflected that certain closed investments were referred by Defendants;[30] however, Plaintiffs allege that Defendants performed no services at all.[31]

Plaintiffs allege they were damaged to the extent of their payment for investments purportedly referred by Defendants, but which Plaintiffs believe were falsely reported as having been referred.[32]   Such masquerade, Plaintiffs contend, resulted in its former business partner's CEO, Kevin Fitzgerald, receiving a portion of fees for the supposed referrals.[33]

---

working with registered representatives and brokers on a project-by-project basis to market the investments and to secure equity investors.").

[27] *Id.* at ¶¶5, 8, 23, 33.

[28] *Id.* at ¶6.

[29] *Id.*

[30] *Id.* at ¶22.

[31] *Id.* at ¶21.

[32] *Id.* at ¶6.

[33] *Id.* at ¶¶5, 8, 23, 33.

As to the necessity of proving fraudulent intent, Plaintiffs first attempt to argue the authority upon which Defendants rely sets a higher standard applicable only in securities fraud cases; but, regardless of the standard applicable to the instant case, they assert their First Amended Complaint "easily" meets the standard proposed by Defendants.[34]  To meet the fraudulent intent requirements, Plaintiffs allege that Defendants gave improper kickbacks to Fitzgerald, returned checks for re-issuance, failed to disclose their relationship with Plaintiffs' business partner, and refused to disclose information concerning the services purportedly performed.[35]

## Analysis

The allegations in the Complaint are that Defendants concealed material facts at the San Antonio meeting, which was held in 2002 at IRI's conference room on St. Mary's Street.[36]  Taking this averment in the light most favorable to the Plaintiffs, this statement satisfies FRCP 9(b).  It sufficiently puts Defendants on notice of who made the misrepresentation, when it was made, and where it was made.

The Complaint also adequately addresses the alleged falsity of the misrepresentations.  The Complaint argues that Defendants never intended to provide referrals, and that the invoices bearing Genoa and St. George's names reflected closed investments in the projects, but that Defendants had no part in the referral of those investors.  Again, Plaintiffs' First Amended Complaint provides Defendants sufficient notice concerning what aspect of the statements are alleged to be false.

Notwithstanding any possible distinction between pleading standards for the element of

---

[34] Docket No. 23 at ¶14.

[35] *Id*. at ¶¶16 - 20.

[36] Docket No. 21 at ¶¶3, 4, 5, 32, 33.

fraudulent intent in securities fraud versus in regular fraud cases, the Court is satisfied that Plaintiffs have met the burden proposed by Defendants.  The pleadings clearly provide a motive for the purported fraudulent activity by repeatedly referencing payment for services allegedly not performed and allegations of kickbacks.[37] More specifically, Plaintiffs contend that Defendants improperly remitted funds to Fitzgerald, caused checks to be reissued, intentionally concealed various material facts during the San Antonio meeting, and have failed to furnish information proving their purported referrals were legitimate.[38]  Consequently, Plaintiff has satisfied the pleading requirement for the issue of fraudulent intent or motive.

As to causation, detrimental reliance, and damages, the First Amended Complaint makes clear that Plaintiffs made payments to Defendants for services it erroneously believed had been performed,[39] and that but for the alleged statements made during the San Antonio meeting, Plaintiffs would not have made such payments.[40]  Moreover, the pleadings sufficiently identify the manner in which Plaintiffs have been damaged.  Plaintiffs allege they paid a large amount of money for investments they were fraudulently led to believe were provided by Defendants.[41]  Clearly, if no services were performed, the amounts paid to Defendants constitute at least a portion of Plaintiffs' damages.

Finally, the alleged fraudulent kickback scheme proposed by Plaintiff involves an elaborate

---

[37] *Id.* at ¶¶3, 5 - 8, 20 - 23, 28, 32 - 33.

[38] *Id.* at ¶5.

[39] *Id.* at ¶6.

[40] *Id.* at ¶¶23, 32, 33.

[41] *Id.* at ¶¶6, 9.

undertaking, with financial advisors, brokers, and investors from multiple states. It is logical to conclude that the details of such an operation are well within the sole knowledge of the parties perpetrating the alleged fraud. Accordingly, Plaintiffs cannot be expected, and are not required, to plead the exact details of the manner in which this allegedly fraudulent process took place. Pursuant to FRCP 9(b), Plaintiffs are only under a duty to "specify the particulars of 'time, place, and contents of the false representations.'"[42] They have discharged this duty.

## Conclusion

From the evidence provided, Plaintiffs have adequately pleaded their cause of action for fraud and have provided adequate notice of the nature of their complaint. Plaintiffs' right to relief is more than speculative, as it is plausible on its face. Therefore, the Court **DENIES** Defendants' Motion to Dismiss for Failure to Plead Properly in Accordance with Federal Rule of Civil Procedure 9(b) (Docket No. 22). Having denied Defendants' 9(b) Motion to Dismiss, the Court **DENIES** as moot Plaintiffs' alternative request for leave to file an amended complaint.

It is so ORDERED.

SIGNED this 11th day of April, 2008.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[42] *WMX Technologies, Inc.*, 112 F.3d at 179.