IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| INTERNACIONAL REALTY, INC.; | § | |
| USA BRADENTON, LLC; | § | |
| USA CAMBRIA, LLC; | § | |
| USA CONYERS, LLC; | § | |
| USA MEYER PARK I, LLC; | § | |
| USA MEYER PARK II, LLC; | § | |
| USA SEASONS, LLC; | § | |
| CHASCO APARTMENTS, LLC; | § | |
| USA COURT VILLAGE, LLC; | § | |
| USA SAVOY, LLC; and | § | |
| USA HOLISTER PLACE GP, LLC, | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. |
| v. | § | |
| | § | SA-07-CV-0981 XR |
| DONALD L. FERRARI; | § | |
| ST. GEORGE FINANCIAL, INC.; and | § | |
| GENOA TRADING COMPANY, INC., | § | |
| | § | |
| Defendants. | § | |
| ****************************************** | | |
| DON L. FERRARI and | § | |
| ST. GEORGE FINANCIAL, INC., | § | |
| | § | |
| Counter-Plaintiffs, | § | |
| v. | § | |
| | § | |
| INTERNACIONAL REALTY, INC.; | § | |
| USA BRADENTON, LLC; | § | |
| USA CAMBRIA, LLC; | § | |
| USA CONYERS, LLC; | § | |
| USA MEYER PARK I, LLC; | § | |
| USA MEYER PARK II, LLC; | § | |
| USA SEASONS, LLC; | § | |
| CHASCO APARTMENTS, LLC; | § | |
| USA COURT VILLAGE, LLC; | § | |
| USA SAVOY, LLC; and | § | |
| USA HOLISTER PLACE GP, LLC, | § | |
| | § | |
| Counter-Defendants. | § | |

TO:    Honorable Xavier Rodriguez
        United States District Judge

## REPORT AND RECOMMENDATION ON
## MOTION FOR SUMMARY JUDGMENT ON CLAIM OF QUANTUM MERUIT

This report and recommendation addresses the first motion for summary judgment filed by the plaintiffs/counter-defendants—Internacional Realty, Inc.; USA Bradenton, LLC; USA Cambria, LLC; USA Conyers, LLC; USA Meyer Park I, LLC; USA Meyer Park II, LLC; USA Seasons, LLC; Chasco Apartments, LLC; USA Court Village, LLC; USA Savoy, LLC; and USA Holister Place GP, LLC.[1] The motion asks for summary judgment on the remaining counter-claim brought by defendants Don Ferrari and St. George Financial, Inc. (the defendants/counter-plaintiffs).[2] (Ferrari is President and Director of St. George Financial.) In the counter-claim, the defendants/counter-plaintiffs rely on the Texas theory of quantum meruit to recover fees they allege are due for referral services provided to the plaintiffs/counter-defendants.[3] After considering the motion, the response, and the reply, I recommend granting the motion and entering summary judgment on the counter-claim in favor of the plaintiffs/counter-defendants. Because the parties are sophisticated business entities represented by exceptional advocates, the district court should anticipate objections requiring a de novo review before the February 2, 2009 trial date. The parties' advocates have spun the law and the evidence to the full extent of advocacy, making the question of summary judgment appear complex. While the parties' arguments complicate the issues in this case, this report and recommendation distills the arguments and issues to permit the district court to resolve the counter-claim before the scheduled trial and provide the parties with guidance that may be helpful in

---

[1] Docket entry # 74.

[2] Defendant Genoa Trading, Inc., is not a party to the counter-claim,

[3] Docket entry # 38, ¶ 6.

2

mediating their dispute on January 12, 2009. The basis of my recommendation follows.

The plaintiffs/counter-defendants maintain they are entitled to summary judgment on the counter-claim for quantum meruit because the defendants/counter-plaintiffs—through Ferrari—admitted they provided referral services gratuitously and the defendants/counter-plaintiffs cannot show the plaintiffs/counter-defendants received reasonable notice that defendants/counter-plaintiffs expected compensation from plaintiffs/counter-defendants for the referrals. The plaintiffs/counter-defendants maintain that any agreement for payment of referral fees was between Ferrari and non-party Kevin Fitzgerald—not between Ferrari and the plaintiffs/counter-defendants.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4]

> Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received. To recover under the doctrine of quantum meruit, a plaintiff must establish that: 1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient.[5]

"To recover in quantum meruit, the plaintiff must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant."[6] "Quantum meruit relief cannot be obtained where the benefit is conferred officiously or gratuitously or where the services were rendered to gain a business advantage or where the

---

[4]Fed. R. Civ. P. 56(c).

[5]*Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citations omitted).

[6]*Economy Forms Corp. v. Williams Bros. Const. Co.*, 754 S.W.2d 451, 459 (Tex. App.—Hous. [14 Dist.] 1988, no writ).

3

defendant could not have reasonably believed that the plaintiff expected a fee."[7] In this case, the defendants/counter-plaintiffs seek to charge the plaintiffs/counter-defendants a 2% referral fee for referring investment advisors that led to client investments in tenant-in-common interests in multi-family residential real estate. The plaintiffs/counter-defendants contend that the defendants/counter-plaintiffs cannot show that they performed services for the plaintiffs/counter-defendants or that the defendants/counter-plaintiffs reasonably expected to be paid by the plaintiffs/counter-defendants.

The claims and counter-claims in this lawsuit flow from the past business relationship between International Realty and non-party US Advisor to offer third party investors tenant-in-common interests in multi-family residential real estate. As part of its role in the relationship, US Advisor was responsible for finding potential investors. Fitzgerald is US Advisor's CEO. The plaintiff/counter-defendants presented summary judgment evidence showing that Fitzgerald used Ferrari to assist him in finding investors because Ferrari had an extensive background in real estate investments. That evidence shows that Ferrari performed services for Kevin Fitzgerald, not the plaintiffs/counter-defendants.

Ferrari testified in his deposition that he had a verbal agreement with Fitzgerald to refer to US Advisor investors interested in tenant-in-common interests in multi-family residential real estate[8] and that he made referrals to Fitzgerald rather than the plaintiffs/counter-defendants.[9] Ferrari

---

[7] *Peko Oil USA v. Evans*, 800 S.W.2d 572, 577 (Tex. App.—Dallas 1990, no pet.).

[8] Docket entry # 74, exh. A, p. 173, line 2 to p. 176, line 9.

[9] *Id*. at p. 186, lines 4-7. *See id.*, exh. L, p. 49, lines 19-23 (Fitzgerald testified that Ferrari made referrals to US Advisor).

stated that he never felt he had an agreement with Internacional Realty or the FeeCo plaintiffs[10]—the plaintiffs other than Internacional Realty, Inc.— and that the FeeCo plaintiffs were under no compulsion to pay him any money.[11] This testimony shows that no agreement for compensation for referrals existed between Ferrari and the plaintiffs/counter-defendants. To the extent that an agreement existed, the agreement was between Ferrari and Fitzgerald based on their long-term friendship and past dealings. Without evidence that Ferrari believed he had an agreement for compensation with the plaintiffs/counter-defendants, Ferrari cannot recover in quantum meruit because he cannot show that his efforts were undertaken for the plaintiffs/counter-defendants—the persons sought to be charged. In the absence of an agreement with the plaintiffs/counter-defendants, the defendants/counter-plaintiffs had no reasonable basis for believing they would be paid by the plaintiffs/counter-defendants because no basis exists for an implied promise on the part of the plaintiffs/counter-defendants. The defendants/counter-plaintiffs may have expected to be paid by Fitzgerald or US Advisor, but the counter-claim does not seek recovery from Fitzgerald or US Advisor.

Ferrari's deposition testimony also shows the defendants/counter-plaintiffs never notified the plaintiffs/counter-plaintiffs that they expected to be paid. Ferrari testified that he had never heard of the FeeCo plaintiffs until he received checks from those entities,[12] he never invoiced the plaintiffs/counter-defendants,[13] and he came to terms with the fact that neither he nor St. George

---

[10] *Id*. at p. 176, lines 16-20.

[11] *Id*. at p. 16, line 16 to p. 17, line 16.

[12] *Id*. at p. 12, lines 7-15.

[13] *Id.* at p. 14, lines 11-13.

5

would receive future checks when the checks stopped.[14] In addition, Hugh Caraway, CEO for Internacional Realty, attested that he had "never received or seen any request for payment from Don Ferrari, St. George Financial, Inc., or Genoa Trading Company, Inc. with respect to a property offering sponsored by [Internacional Realty]."[15] Unless the defendants/counter-plaintiffs can raise a fact question about an implied promise between Ferrari and the plaintiffs/counter-defendants, the defendants/counter-plaintiffs are entitled to summary judgment.

Responding, the defendants/counter-plaintiffs first argue that the district court's prior findings preclude summary judgment. The defendants/counter-plaintiffs rely on the district court's order denying the plaintiffs' motion to dismiss the counter-claim for quantum meruit[16]—specifically, the district court's characterization of the plaintiffs' argument as "excessive."[17] That characterization referred to the argument that the quantum-meruit claim should be dismissed because Ferrari admitted in his answer that the plaintiffs/counter-defendants were neither legally nor contractually required to pay him for referrals.[18] In denying the motion, the district court recognized that a "party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished."[19] Thus, an argument based on a plaintiff's admission that the defendant was neither legally nor contractually required to pay the

---

[14] *Id*. at p. 207, lines 3-13.

[15] Docket entry # 74, exh. J, p. 2.

[16] Docket entry # 49.

[17] *See* docket entry # 58, p. 7.

[18] *See* docket entry # 38, ¶ 22.

[19] *In re Kellogg Brown & Root*, 166 S.W.3d 732, 740 (Tex. 2005).

6

plaintiff is excessive because the argument disregards the legal theory underlying a quantum-meruit claim—an expectation based on implied promise rather than a contractual obligation. Because a plaintiff seeking to recover in quantum meruit must prove he reasonably expected the defendant to pay him for the services provided, the district court focused on Ferrari's expectation—as set out in his affidavit dated May 28, 2008[20]—that Ferrari would be paid a 2% finder's fee or referral fee of the total investor investment.[21] Since that time, Ferrari was deposed, revealing more about the nature of the counter-claim. The district court's earlier order does not preclude summary judgment because the plaintiffs/counter-defendants rely on Ferrari's deposition rather than the defendants/counter-plaintiffs's answer.

The defendants/counter-plaintiffs next argue that the plaintiffs/counter-defendants miscontrue Ferrari's deposition testimony that he was unaware of whether the plaintiffs/counter-defendants owe him money for referral services.[22] That testimony, however, is significant if the plaintiffs/counter-defendants had reasonable notice that Ferrari expected compensation for referrals. As discussed above, the defendants/counter-plaintiffs did not notify the plaintiffs/counter-defendants that they expected compensation.

Perhaps recognizing the evidence doesn't show an agreement between Ferrari and the plaintiffs/counter-defendants, the defendants/counter-plaintiffs next argue that Fitzgerald's knowledge about an agreement to compensate Ferrari is imputed to all plaintiffs/counter-defendants. The defendants/counter-plaintiffs contend Fitzgerald's knowledge must be imputed to

---

[20] Docket entry # 52, exh. D, ¶ 3.

[21] Ferrari did not specify who he expected to pay the 2% fee. *See id.*

[22] *See* docket entry # 73, § II.

the plaintiffs/counter-defendants because Internacional Realty and US Advisor/Kevin Fitzgerald were partners in a joint venture to offer the FeeCo investment products[23]—that is, because Fitzgerald knew that Ferrari expected to be compensated, the plaintiffs/counter-defendants knew that Ferrari expected to be compensated. The argument is a resourceful one based on Texas joint venture partnership law, but the argument stretches the evidence too far to raise a fact question.

Although Fitzgerald characterized the business relationship between Intenactional Realty and US Advisor as a joint venture,[24] Internacional Realty's CEO Hugh Caraway testified that there was never a general partnership between Internacional Realty and US Advisor. Instead, Caraway stated that the entities created a specific partnership or limited liability company for each real estate deal[25]—the deals represented by the FeeCos. The defendants/counter-plaintiffs rely on Caraway's deposition as an admission that Caraway knew that Ferrari expected the plaintiff/counter-defendants to pay him for referrals, but Carraway's testimony only shows that Carraway understood that Ferrari would refer investors to US Advisor and that Fitzgerald intended to pay Ferrari. Caraway testified that he "went along" with Fitzgerald's recommendation that Ferrari refer investors,[26] not that he knew that Ferrari expected the plaintiffs/counter-defendants to pay him.

Caraway's understanding is consistent with US Advisor's understanding. Fitzgerald attested that "[t]here was no agreement or contract written or oral between [Internactional Realty], US Advisor, Hugh Carraway, Genoa Trading Company. . ., St. George Fianancial. . ., Don Ferrari or

---

[23] Docket entry # 75, p. 13.

[24] Docket entry # 75, exh. F, p. 21, lines 11-15.

[25] Docket entry # 75, exh. E, p. 155, line 17 to p. 156, line 17.

[26] Docket entry # 73, exh. E, p. 42, line 3 to p. 43, line 3.

8

me that required Mr. Ferrari to refer advisors or otherwise perform other services. [Ferrari] referred advisors to me, with no legal right to be paid a referral fee."[27] Fitzgerald further attested that he directed that Ferrari be paid a fee for referring business that resulted in investors closing business in the properties found by Internacional Realty[28] and marketed by US Advisor and characterized the referral fee as a "reward."[29]

**Recommendation**. The summary-judgment evidence shows no basis for believing the plaintiffs/counter-defendants made an implied promise to pay the defendants/counter-plaintiffs for referrals. The defendants/counter-plaintiffs have presented evidence showing Caraway/Internacional Realty knew Ferrari expected a 2% fee, but no evidence indicates Ferrari expected the plaintiffs/counter-defendants to pay him; indeed, Ferrari testified that the plaintiffs/counter-defendants didn't have to pay. Consequently, I recommend GRANTING the motion for summary judgment (docket entry # 74) and entering SUMMARY JUDGMENT on the quantum-meruit claim in favor of the plaintiffs/counter-defendants. If the district court accepts this recommendation, the plaintiffs/counter-defendants' second motion for summary judgment on the counter-claim (docket entry # 84) and the defendants/counter-plaintiffs motion to strike that motion (docket entry # 98) will be moot.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a

---

[27]Docket entry # 75, exh. D, ¶ 5.

[28]*Id*.

[29]*Id*. at ¶ 6.

"filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[30] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[31] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[32]

**SIGNED** on January 7, 2009.

*[signature]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[30] 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[31] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[32] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).